H. M. KIRBY, ADMINISTRATOR, ETC., v. W. S. DAY.

1. A judgment rendered on a note given for a loan of Confederate money cannot be sustained on the ground that the defendant induced the plaintiff to sell cotton, in order to raise the Confederate money for which the note was given.   The adjudications of this court upon Confederate money transactions have not been influenced by such considerations.

2. *Quære*, would an action for damages lie in favor of a party who was fraudulently induced by another to sell property for Confederate money ?

APPEAL from Austin. Tried below before the Hon. L. Lindsay.

The material facts are stated in the opinion.

*Sayles & Bassetts*, for the appellant.

*Hunt & Holland*, for the appellee.

WALKER, J.—This is an action brought in the District Court of Austin county, at the Spring term for the year 1866, on a promissory note calling for the sum of $10,000, dated on the twentieth of March, 1863, due one year from date, and bearing ten per cent. interest. Every syllable of the evidence contained in the statement of facts which accompanies the record goes to show that the note was given for Confederate treasury notes.

The charge of the court, whilst it may not have misstated the law, was ambiguous, and did not fully explain the law to the jury. The second paragraph of the charge first given by the court to the jury reads as follows:

"It is for you to determine, from all the facts proved before you, whether by the arrangement it was agreed between the parties that Col. Kirby was to get the benefit of $10,000 worth of Col. Day's cotton in the market then open, and whether he did so get the benefit of his cotton, for which he executed the note sued on." And then what? Would this make Kirby liable on the note? This charge was not warranted by the facts, nor is it the law of this case when interpreted by the light of the facts.

Take the case just as it stands upon the evidence. Col. Day had one hundred and forty bales of cotton, which, by his own evidence, would not have brought five cents a pound in coin; but it would and did bring twenty-six cents in Confederate money. Col. Kirby

wanted money ; Confederate money would answer his purpose ; he was willing to borrow ten thousand dollars, at ten per cent. interest, to be repaid in par funds. Now, with this understanding, Day delivered his own cotton to his own commission merchants, Peel & Dumble, in Houston. He gave instructions for the sale of the cotton ; the cotton was sold, and the proceeds held subject to his order, as is conclusively shown (and not denied) by his giving his two checks to Kirby, drawn on Peel & Dumble,—the one for seven thousand and the other for three thousand dollars. These facts certainly disprove and expose every sham and pretense that Day sold his cotton to Kirby ; and it is very difficult to find what difference it can possibly make in the law of this case, that Day should have sold his cotton when he did and how he did, in order that he might enable himself to loan Kirby ten thousand dollars in Confederate money.

If we could imagine that this was an action brought by Day against Kirby, for fraudulently inducing him to sell his cotton for Confederate money, there might be some sense in the pretense that Kirby was instrumental in inducing Day to part with his cotton to his detriment and damage.

But this is an action on a promissory note given for Confederate money, and neither had the district court, nor have we, any business to inquire how Day obtained the money he loaned to Kirby; nor is it a matter that can have anything to do with the legal determination of this case, that Kirby "got *the benefit*," so to speak, of Day's cotton. Such a consideration has never been permitted by this court in determining questions kindred to that before us.

There is not one particle of evidence furnished us by the statement of facts which goes to show that Day

actually sold his cotton to Kirby. He sent it to his commission merchants, and they, by his direction, sold it for Confederate money—a transaction just as illegal, in every sense, as that subsequently carried out with Kirby, so that the latter derives no sanctity from the former.

Suppose Day had sold his cotton to Kirby for a given amount, to be paid in Confederate money? We certainly would not enforce the payment; and yet this would be a transaction tainted by but one illegal act, whilst that which we are considering is shown to have partaken of illegality, both in the sale of the cotton by Peel & Dumble, and by the subsequent loan to Kirby.

The verdict in this case is contrary both to law and evidence, and the charge of the court misled the jury. The judgment is reversed, and the cause dismissed.

REVERSED AND DISMISSED.